**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**FACTORY ASSOCIATES &**
**EXPORTERS, INC.**
                                        **Plaintiff,**

**-against-**                                        **05-CV-837**


**LEHIGH SAFETY SHOE CO. LLC**,

                                        **Defendant.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**



**DECISION & ORDER**

## I.  INTRODUCTION

Plaintiff Factory Associates & Exporters, Inc. ("Plaintiff" or "Factory Associates")

commenced this action asserting claims sounding in breach of contract (First and Fourth

Causes of Action), fraudulent misrepresentation (Second and Fifth Causes of Action), and

unjust enrichment (Third and Sixth Causes of Action). See Compl., dkt. # 1.  Defendant

Lehigh Safety Shoe Co. LLC ("Defendant" or "Lehigh") answered and asserted

counterclaims sounding in failure to pay on an account stated (First Counterclaim), breach

of contract (Second Counterclaim), and unjust enrichment (Third Counterclaim). See Ans.

& Counterclaim, dkt. # 18.  Presently before the Court are Defendant's motion for

summary judgment, dkt. # 29, and Plaintiff's motion to amend the complaint to add claims

for breach of warranty and detrimental reliance, dkt. # 31.  Each party has opposed the

other party's motion.

## II.  BACKGROUND

Plaintiff has been a safety shoe distributor for Defendant since 1998.  The parties entered a "joint venture stocking agreement" whereby Defendant agreed to supply safety shoes to Plaintiff who would then sell them to companies involved in the oil industry in Nigeria.  Primarily, the parties believed that the majority of the shoes would be sold to Shell Petroleum Development Company ("Shell").  The case concerns Plaintiff's 2002 order for safety shoes from Defendant for resale through Plaintiff's Nigerian agent and distributor, Jkpeez Impex Limited Co. ("Jkpeez").  See D'Abramo Dep. pp. 16-17, 20, 31, 40-41, 64, 66, 71, 88, 92-93, 168-169, 195; Compl. ¶ 16; Plt. Resp. to Def.'s Int. # 2 & # 9. p. 64.[1]

Prior to the 2002 shoe order, Defendant sent its annual catalog to Plaintiff.  The catalog, which was approximately 85 pages, contained Lehigh's Promise Plus™ 6 Month Warranty ("Lehigh's Warranty").  Factory Associates received and reviewed the catalog and saw Lehigh's Warranty.  Lehigh contends that it extended the six-month warranty to Factory Associates to a one year-period from the time the shoes were shipped and delivered.

Factory Associates had previously purchased Lehigh Style 1628 and Lehigh Style 1636 safety shoes and sought to order these shoes in 2002.  However, these shoes were

---

[1] Frank D'Abramo was Factory Associates' Fed. R. Civ. P. 30(b)(6) witness.  See fn. 6, infra.  During his deposition, he repeatedly refers to Jkpeez as Factory Associates' "agent in Nigeria." See D'Abromo Dep. pp. 16-17, 20, 31, 40-41, 64, 66, 71, 88, 92-93, 168-169, 195. The Complaint also references Jkpeez as Factory Associates' "agent," Compl. ¶ 16, as does Plaintiff's responses to Defendant's Interrogatories. See Plt. Resp. to Def.'s Int. # 2 & # 9.

no longer available in large quantities.  Defendant represented that Lehigh Style 5628 replaced Lehigh Style 1628, and that Lehigh Style 5636 replaced Lehigh Style 1636. Lehigh represented that the replacement shoe models were new and improved versions of the older shoes.  The purported improvement was that the soles of the new models were made of polyester polyurethane compound, a different material than the older model shoes, and was of a new outsole design.  Lehigh represented that the new shoes had greater comfort and wear characteristics, and that the new outsole design provided greater slip resistance and more durability than the previous design.

Sometime between January 17, 2002 and March 28, 2002, Plaintiff placed an order with Defendant for at least 8,214 pairs of Lehigh Style 5628 and Lehigh Style 5636 safety shoes.[2]  The price for the shoes was originally stated as $47.31 per pair (see Purchases Order, Ex. G to D'Abramo Decl.), but the parties later agreed to reduce the price to $45.00 per pair.  Defendant knew prior to purchase that Plaintiff would store at least some of the shoes in Jkpeez's warehouse in Nigeria, but Defendant contends it did not know or believe that the shoes would be stored for more than one year.

On April 25, 2002, Plaintiff received 8,214 pairs of these safety shoes that Defendant shipped from Hong Kong to Jkpeez in Nigeria.  In July 2002, Jkpeez sold 1,026 pairs of the shoes to Shell to fill a back order.  Other than these 1,026 pairs, however, Shell declined to purchase additional shoes.  Believing that Shell might purchase additional shoes in the future, Plaintiff elected to hold the shoes in storage in Jkpeez's

---

[2] Defendant contends that Plaintiff placed an order on March 28, 2002 for 8,214 pairs of safety shoes.  Plaintiff contends that the order was placed on January 17, 2002 and was for 9,530 pairs of safety shoes. As will discussed in the text, there is no dispute that the case involves only the 8,214 pairs of safety shoes that were delivered to Plaintiff on April 25, 2002.

warehouse in Nigeria.  Plaintiff and Defendant also engaged in further negotiations

concerning the price of the shoes.  Plaintiff contends that Defendant agreed to lower the

price to $39.75 per pair of shoes.  Defendant contends that it agreed to lower the price to

$39.75 per pair but that the agreement was contingent on Plaintiff receiving future shoe

orders from Shell.

In October of 2003, Jkpeez began selling the remaining shoes to customers other

than Shell.[3]  Some of these customers complained to Jkpeez that the shoes' soles were

deteriorating.  Jkpeez informed Plaintiff about the complaints in November of 2003.

Plaintiff complained to Defendant of a manufacturing defect with the shoes at the end of

2003 or the beginning of 2004.

In May 2004, Shell complained to Jkpeez regarding 41 pairs of Lehigh safety shoes

that Shell had stored in its Nigerian warehouse for more than a year.  An employee of

Jkpeez, Goddy Igboko, visited Shell's warehouse.  Igboko drafted a report stating that

"Lehigh provides a warranty of twelve months from the date of sale to the customer for its

stock of shoes."  Igboko further stated in his report that "[t]he shoes in reference have

visibly overstayed in the warehouse - upwards of three years and are therefore no longer

covered by the Manufacturers [sic] warranty."   In the fall of 2006, after this action was

started, Plaintiff investigated the Lehigh safety shoes remaining in Jkpeez's warehouse

and concluded that all remaining shoes were similarly defective because their soles were

also deteriorating.

Plaintiff asserts that the polyester polyurethane soles deteriorated from hydrolytic

---

[3] In total, including the shoes sold to Shell, Plaintiff sold 2,562 of the 8,214 pairs of safety shoes
received on April 25, 2002.

attack (otherwise know as hydrolysis or moisture attack), which is purportedly a known condition within the footwear industry whereby polyurethane material degrades when exposed to heat and humidity.  Plaintiff further contends that Defendant knew or should have known that: (1) hydrolytic attack begins at time of manufacture and can cause a polyester polyurethane sole to decompose within weeks or months depending on actual temperature and relative humidity, (2) the shoes sold to Plaintiff were intended to be stored for more than a year in warehouses in Nigeria, and (3) the climate in Nigeria is hot and humid.

The First, Second and Third Causes of Action in Plaintiff's Complaint concern the 5,652 pairs of shoes that Plaintiff did not sell and that are still in Jkpeez's possession.  The Fourth, Fifth and Sixth Causes of Action relate to the 2,562 pairs of shoes that Jkpeez did sell.  Plaintiff admits that it seeks damages only for the 5,652 pairs of shoes that Jkpeez did not sell.

Defendant seeks $43,123.36 from Plaintiff in its counterclaim.  In this regard, Defendant contends that Plaintiff paid only $39.75 per pair of shoes ($326,506.50) but that the contingency that would have lowered the price of the shoes from $45 to $39.75 per pair (i.e. Shell's additional order of shoes) never resulted.  Thus, Defendant contends that Plaintiff owes $43,123.36 for the shoes based upon the agreed-upon price of $45 per pair.

## III. STANDARDS OF REVIEW

### a.  Amendment of Complaint Under Rule 15(a)

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend "shall be freely given when justice so requires."   "In the absence of any apparent or

5

declared reason - such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. - the leave sought should, as the rules require, be 'freely given.'" Foman v. Davis, 371 U.S. 178, 182 (1962). Thus, even if there was substantial delay in seeking to amend, leave will be granted unless the movant has acted in bad faith, the amendment will prejudice the nonmovant, or the amendment is futile. See Richardson Greenshields Sec., Inc. v. Lau, 825 F.2d 647, 653 n. 6 (2d Cir. 1987)(noting that a motion to amend should be denied only for undue delay, bad faith, futility or prejudice to opposing party; mere delay alone, absent a showing of bad faith or prejudice, is not grounds for denial of leave to amend) (citations omitted).

"An amendment is considered futile if the amended pleading fails to state a claim or would be subject to a successful motion to dismiss on some other basis." Lamb v. Henderson, 1999 WL 516271, at *2 (S.D.N.Y. Aug. 9, 1999)(citing S.S. Silberblatt, Inc. v. East Harlem Pilot Block, 608 F.2d 28, 42 (2d Cir. 1979)).  A court, therefore, is justified in denying an amendment that could not withstand a motion to dismiss. Id. (internal citations omitted); see also Ruffolo v. Openheimer & Co., 987 F.2d 129, 131 (2d Cir. 1993)(where granting leave to amend is unlikely to be productive it is not an abuse of discretion to deny leave to amend).

### b.  Summary Judgment

_____It is well settled that on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the non-moving party, see Tenenbaum v.

Williams, 193 F.3d 581, 592 (2d Cir. 1999), and may grant summary judgment only where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). An issue is genuine if the relevant evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). A party seeking summary judgment bears the burden of informing the Court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of a genuine issue of material fact as to a dispositive issue. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the movant is able to establish a prima facie basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). While the Court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in his favor, Abramson v. Pataki, 278 F.3d 93, 101 (2d Cir. 2002), a party opposing a properly supported motion for summary judgment may not rest upon "mere allegations or denials" asserted in his pleadings, Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir. 1994), or on conclusory allegations or unsubstantiated speculation. Scotto v. Almenas, 143 F.3d 105, 114 (2d. Cir. 1998). Further, a party cannot rely on inadmissible hearsay in opposing a motion for summary judgment. Burlington Coat Factory Warehouse Corp. v. Esprit De Corp., 769 F.2d 919, 924 (2d Cir. 1985)(citations omitted); see also Hollander v. American Cyanamid Co., 172 F.3d 192, 198 (2d Cir. 1999), abrogated on other grounds, Reeves v.

<u>Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133, 148 (2000)( "A court may [ ] strike portions of an affidavit that are not based upon the affiant's personal knowledge, contain inadmissible hearsay or make generalized and  conclusory statements.").

In short, summary judgment will be granted when it is apparent on the facts presented that no rational trier of fact could find in favor of the nonmoving party because evidence supporting the essential elements of the non-movant's claim is lacking. Fed. R. Civ. P. 56(c);  <u>Celotex</u>, 477 U.S. at 332.

## IV.  DISCUSSION

### a.  Fourth, Fifth and Sixth Causes of Action

Plaintiff concedes that it seeks damages only for the 5,652 pairs of shoes that it did not sell, and that it does not seek damages for the 2,562 pairs of shoes that it sold.[4]  The 2,562 pairs of shoes that it sold are the subjects of Fourth, Fifth and Sixth Causes of Action in the Complaint.  Because Plaintiff does not seek damages for the shoes that are the subjects of Fourth, Fifth and Sixth Causes of Action in the Complaint, these causes of action are dismissed.

### b.  Defendant's Counterclaim

Defendant also seek summary judgment on its counterclaim seeking $43,123.36 from Plaintiff for the allegedly unpaid portion of the shoes' sale price.  However, when viewing the evidence in the light most favorable to the non-movant, a factual dispute exists as to of the agreed-upon purchase price of the 8,214 pairs of Lehigh safety shoes received by Plaintiff on April 25, 2002.  While the parties agree that the price per pair of

---

[4] The proposed Amended Complaint seeks damages, under various theories, only for the 5,652 pairs of shoes that Plaintiff did not sell and that remained in its inventory.

8

these shoes was reduced from $47.31 (as stated in the original Purchases Order, see Ex.

G to D'Abramo Decl.) to $45.00, they disagree as to whether they agreed to a contingent

further reduction to $39.75 per pair.  See D'Abramo Aff., ¶ 17 ("I deny that the price

reduction [to $39.75 per pair] was contingent on any event, including Shells' [sic] awarding

of a contract to JKPEEZ.").  Therefore, that portion of Defendant's motion is denied.

### c.  Unjust Enrichment

_____Defendant moves to dismiss Plaintiff's unjust enrichment claims on the grounds that

Plaintiff has an exclusive contractual remedy.  See Def. Mem. L. pp. 24-25 (citing, *inter*

*alia* City of Yonkers v. Otis Elevator Co., 844 F.2d 42, 48 (2d Cir. 1988)).  Plaintiff has not

opposed this portion of Defendant's motion. The failure to oppose a portion of a motion

seeking to dismiss a claim is deemed abandonment of the claim, see Rizzo-Puccio v.

College Auxiliary Services, Inc., 216 F.3d 1073 (2d Cir. 2000)(claims not addressed in

opposition to defendants' motion for summary judgment were deemed abandoned), and,

in the Northern District of New York, is deemed consent to granting the motion. See Bundy

Am. Corp. v. K-Z Rental Leasing, Inc., 2001 WL 237218, at *1 (N.D.N.Y. Mar. 9,

2001)(Hurd, J.); Beers v. General Motors Corp., 1999 WL 325378, at *8 (N.D.N.Y. May 17,

1999) (McCurn, S.J.).   Plaintiff's failure to oppose this portion of the motion is deemed

implicit consent to dismissal of the unjust enrichment claim.

Further, the claim is subject to dismissal for lack of substantive merit.  Under New

York law, which the parties agree governs this diversity action,

> "it is well settled that absent certain circumstances ..., '[t]he existence of a
> valid and enforceable written contract governing a particular subject matter
> ordinarily precludes recovery in quasi contract for events arising out of the
> same subject matter.'"  DiMario v. Coppola, 10 F. Supp.2d 213, 225

(E.D.N.Y. 1998) (quoting <u>Clark-Fitzpatrick, Inc. v. Long Island R. Co.</u>, 70
N.Y.2d 382, 388, 521 N.Y.S.2d 653, 656, 516 N.E.2d 190 (1987)); <u>see also</u>
<u>City of Yonkers v. Otis Elevator Co.</u>, 844 F.2d 42, 48 (2d Cir. 1988) (relief
under quasi-contractual theories "is unavailable where an express contract
covers the subject matter").

<u>Conocophillips v. 261 East Merrick Road Corp.</u>, 428 F. Supp.2d 111, 127 (E.D.N.Y.

2006).

There is no dispute that a valid and enforceable written contract exists governing

the purchase of the subject shoes.  Further, Plaintiff has asserted no circumstances that

would take the case beyond the application of this well-settled rule.  Accordingly, the

unjust enrichment claim asserted in the Third Cause of Action is dismissed.

### d.   Detrimental Reliance

For similar reasons, Defendant argues that amendment to add a claim of

"detrimental reliance" would be futile under New York law and should, therefore, be

denied.  The Court agrees.

In the proposed Amended Complaint, Factory Associates claims that it relied to its

detriment on false statement and representations made by Lehigh regarding the quality of

the Lehigh Style 5628 and Lehigh Style 5636 safety shoes when it entered the parties'

contract.  <u>See</u> Pro. Am. Compl. ¶¶ 7, 35-41.  "There is no independent cause of action for

detrimental reliance.  Detrimental reliance is, however, an element of equitable and

promissory estoppel."  <u>Adams v. Washington Group, LLC</u>, 2006 WL 1042358, at * 1 (N.Y.

Sup. Ct, Kings Cty. April 19, 2006); <u>see</u> <u>Cyberchron Corp. v. Calladata Sys. Dev., Inc.</u>, 47

F.3d 39, 44 (2d Cir.1995) ("reasonable and foreseeable reliance" is an element of a New

York promissory estoppel claim).

To the extent Plaintiff asserts a claim for promissory estoppel in the proposed

Amended Complaint, see Adams, 2006 WL 1042358, at * 2,[5] the claim is not legally

cognizable because there is no dispute that a valid and enforceable contract governed the

transaction in issue.  Under New York law, a claim for promissory estoppel exists only in

the absence of an enforceable contract.  Merex A.G. v. Farichild Weston Systems, Inc., 29

F. 3d 821, 824 (2d Cir. 1994); see Levin v. Gallery 63 Antiques Corp.,  2006 WL 2802008,

at * 19 (S.D.N.Y. Sept. 26, 2006)("The causes of action for money had and received,

promissory estoppel, unjust enrichment, and negligence are all quasi-contract claims and

are therefore not viable, where, as here, it is undisputed that the parties entered into an

express agreement that governs the dispute.")(citations omitted).  Accordingly,

amendment to add a claim for "detrimental reliance" would be futile and, therefore, is

denied.

### e.  Fraudulent  Misrepresentation

Defendant also seeks to dismiss the fraudulent misrepresentation claim asserted in

the Second Cause of Action in the Complaint.   In support of this portion of the motion,

Lehigh cites to the deposition testimony of Frank D'Abramo, Factory Associates' Fed. R.

---

[5]"The elements of promissory estoppel are: a clear and unambiguous promise; a reasonable and foreseeable reliance by the party to whom the promise is made; and an injury sustained by the party asserting the estoppel by reason of his reliance." Adams, 2006 WL 1042358, at * 2 (citations omitted).  By contrast, "[t]he elements of equitable estoppel are: with respect to the party estopped: (1) conduct which amounts to a false representation or concealment of material facts; (2) intention that such conduct will be acted upon by the other party; and (3) knowledge of the real facts. The party asserting estoppel must show with respect to himself: (1) lack of knowledge of the true facts; (2) reliance upon the conduct of the party estopped; and (3) a prejudicial change in his position." Id. (citation and interior quotation marks omitted). Plaintiff does not assert that Defendant engaged in any conduct that amounted to a false representation or concealment of a material fact, but rather made "statements and representations" about the quality of Lehigh Style 5628 and Lehigh Style 5636 safety shoes.  See Proposed Am. Compl.  ¶¶ 7, 36-37, 40.

Civ. P. 30(b)(6) witness,[6] where he testified:  "I don't believe [anyone at Lehigh] said

anything false to me." D'Abramo Dep. p. 177.   Plaintiff has not opposed this argument in

its Memorandum of Law and, therefore, the claim is subject to dismissal based upon

Plaintiff's implied consent.

To the extent that Plaintiff contends *via* D'Abramo's declaration that an actionable

fraudulent representation occurred when Lehigh represented that Lehigh Style 5628 and

Lehigh Style 5636 safety shoes were improved versions of the shoes they replaced, the

argument fails as a matter of law.

> To prevail on a fraudulent misrepresentation claim under New York law, . . . ,
> a plaintiff must show (1) that [the defendant] made a misrepresentation (2)
> as to a material fact (3) which was false (4) and known to be false by [the
> defendant] (5) that was made for the purpose of inducing [the plaintiff] to rely
> on it (6) that [the plaintiff] rightfully did so rely (7) in ignorance of its falsity (8)
> to his injury.

Cohen v. Koenig, 25 F.3d 1168, 1172 (2d Cir. 1994)(internal quotation marks and citations

omitted); see also Levin, 2006 WL 2802008,  at * 6.[7]   Each element must be shown by

clear and convincing evidence.  Banque Arabe et Internationale D'Investissement v.

Maryland National Bank, 57 F.3d 146, 153 (2d Cir. 1995).  "[S]tatements will not form the

---

[6] Fed. R. Civ. P. 30(b)(6) provides in pertinent part:

A party may in the party's notice and in a subpoena name as the deponent a public or private corporation or a partnership or association or governmental agency and describe with reasonable particularity the matters on which examination is requested. In that event, the organization so named shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. A subpoena shall advise a non-party organization of its duty to make such a designation. The persons so designated shall testify as to matters known or reasonably available to the organization.

[7] "To state a claim for fraud under New York law, [Plaintiff] must demonstrate: (i) a representation of material fact; (ii) falsity; (iii) scienter; (iv) reasonable reliance; and (v) injury. To plead fraudulent misrepresentation [Plaintiff] must likewise allege that [it] reasonably relied on false representations made by Defendant[]."  Levin,  2006 WL 2802008,  at * 6 (citations omitted).

basis of a fraud claim when they are mere 'puffery.'" <u>Cohen</u>, 25 F.3d at 1172.  Plaintiff

has not established by clear and convincing evidence that the statement that Lehigh

Styles 5628 and 5636 were improved versions of the shoes they replaced constituted

anything more than mere puffery or that the statement was known to be false by Lehigh

when made.

Further, no fraud claim exists because the claim is no different than Plaintiff's

breach of contract claims (discussed below) and seeks the same damages.  <u>See</u>

<u>Melissakis v. Proto Construction & Development Corp.</u>, 294 A.D.2d 342, 343 (2nd Dept.

2002)("With respect to the fraud allegations, the courts of this State have consistently held

* * * that a cause of action for fraud does not arise when the only alleged fraud relates to a

breach of contract.")(citations and interior quotation marks omitted); <u>see also</u> <u>Papa's-June</u>

<u>Music, Inc. v. McLean</u>, 921 F. Supp. 1154, 1162 (S.D.N.Y.1996) (dismissing fraud claim

where "[t]he complaint does not allege a fraud claim that is sufficiently distinct from the

breach of contract claim" but "merely appends allegations about [defendant's] state of

mind to the claim for breach of contract").  "To maintain a claim of fraud in such a

situation, a plaintiff must either:  (i) demonstrate a legal duty separate from the duty to

perform under the contract; or (ii) demonstrate a fraudulent misrepresentation collateral or

extraneous to the contract; or (iii) seek special damages that are caused by the

misrepresentation and unrecoverable as contract damages." <u>Bridgestone/Firestone, Inc.</u>

<u>v. Recovery Credit Services, Inc.</u>,  98 F.3d 13, 20 (2d Cir. 1996)(citations omitted).

Plaintiff has done none of these.  Accordingly, the claim for fraudulent misrepresentation is

dismissed.

**f.  Breach of Contract**

In the Complaint, Plaintiff contends that Defendant sold "defective shoes" and, therefore, breached its obligations under the parties' contract. See Compl. ¶¶ 20-24 (First Cause of Action).   In the proposed Amended Complaint, Plaintiff seeks to expand upon the breach of contract theory to plead claims asserting the breach of an express warranty and breach of implied warranties of merchantability and fitness for a particular purpose. See Proposed Am. Compl. ¶¶ 24-32.  Although the motion to amend the complaint was made after Defendant filed its motion for summary judgment, Defendant was aware of the proposed amendment and addressed the legal sufficiency of the express and implied warranty claims in its motion.  Thus, there is no prejudice to Defendant by the Court considering the legal sufficiency of claims sought to be added by amendment.

**i.  Warranty Limitation**

 Lehigh's Promise Plus™ 6 Month Warranty provides that its shoes are "warranted for six months (180 days) from the date of purchase against defective workmanship and/or materials when used under normal conditions for the purpose intended."  Def. Ex. 4.  It also states, on the bottom of the same page:

> The warranty provided herein is in lieu of all other express warranties.  Any implied warranties, including any implied warranty of merchantability or fitness for a particular purpose, are limited in duration to 180 days from the date of purchase.  All other obligations or liabilities, including liability for incidental and consequential damages, are hereby excluded.

Id.

Defendant asserts that all express and implied warranties are extinguished because (1) Plaintiff reviewed the Promise Plus™ 6 Month Warranty before purchasing the shoes

and (2) even though the warranty period was extended to one year, Plaintiff did not notify Defendant of a claim until well after the one year period expired.

Frank D'Abramo, Factory Associates' Fed. R. Civ. P. 30(b)(6) witness, testified at his deposition that he had seen Lehigh's warranty in its catalogue before ordering the shoes in question.  D'Abromo Dep. pp. 62-63, 66-67.  Further, there is no dispute that the parties agreed to extend the six month warranty to one year.  See Peters Dep. p. 111.  In fact, Goddy Igboko, a representative of Jkpeez, Factory Associates' agent in Nigeria, see fn. 1, *supra,* drafted a report to a customer that  "Lehigh provides a warranty of twelve months from the date of sale to the customer for its stock of shoes."  Thus, to the extent that Plaintiff's breach of contract claim is based on breach of the express warranty that the safety shoes it purchased in 2002 were improved versions of the safety shoes it had previously purchased from Lehigh, see N.Y. U.C.C. § 2-313(1)(a)-(c); Ferracane v. U.S., 2007 WL 316570, at * 8 (E.D.N.Y. Jan. 30, 2007),[8] the claim is barred because Plaintiff failed to bring the claim to Defendant's attention within the applicable warranty period.

To the extent the claim is based on the implied warranties of merchantability or fitness for a particular purpose, Plaintiff argues that the limitation in the Promise Plus™ 6 Month Warranty is insufficient to extinguish these claims.  The Court agrees.

---

[8]As explained by the Eastern District in Ferracane,

Section 2-313 of the Uniform Commercial Code sets forth the three ways in which an express warranty by a seller can be created. First, "[a]ny affirmation of fact or promise made by the seller to [a] buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." N.Y. U.C.C. § 2-313(1)(a). Second, "[a]ny description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." N.Y. U.C.C. § 2-313(1)(b). Third, "[a]ny sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model. N.Y. U.C.C. § 2-313(1)(c).

2007 WL 316570, at *8.

New York Uniform Commercial Code § 2-316(2) provides in pertinent part: "to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous." N.Y.U.C.C. § 2-316(2).  New York Uniform Commercial Code § 1-201(10) provides:

> A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it.  A printed heading in capitals (as:  NON-NEGOTIABLE BILL OF LADING) is conspicuous.  Language in the body of a form is "conspicuous" if it is in larger or other contrasting type or color.  But in a telegram any stated term is "conspicuous".  Whether a term or clause is "conspicuous" or not is for decision by the court.

N.Y. U.C.C. § 1-201(10).  "The common practice of setting forth such language of limitation in large, boldface, type, often in an eye-catching location apart from any boilerplate paragraphs of the agreement, meets this requirement and is enforceable." Kolle v. Mainship Corp., 2006 WL 1085067,  at * 3 (E.D.N.Y. April 20, 2006) (citation omitted).

The implied warranty limitation in issue in this case is not in capital letters, is not in contrasting type or color, is not bolded, and is not in larger type from the rest of the statements on the page.  Rather, the implied warranty disclaimer is in smaller type than the rest of the statements on the page.   The disclaimer is not conspicuous.  While the evidence establishes that Plaintiff and its agents were aware of the warranty limitation as it applied to claims "against defective materials," the evidence is insufficient to support the conclusion that Plaintiff was aware of the limitation of the implied warranties of merchantability or fitness for a particular purpose.   Therefore, Defendant's motion in this

regard is denied.

### ii.   Breach of Implied Warranty of Merchantability and Fitness for a Particular Purpose

Plaintiff contends that Defendant breached the implied warranties of merchantability and fitness for a particular purpose because Defendant sold safety shoes with soles that deteriorated and thereby "rendered the shoes useless for wearing on one's feet for purposes of walking on ordinary surfaces."  Defendant argues that it would be futile to add such claims because Plaintiff's evidence establishes, at most, that the soles of the shoes began deteriorating only after they were stored in warehouses for well over a year, yet there is no evidence that Defendant knew the shoes would be stored for such a period of time.

The warranty of merchantability is governed by New York Uniform Commercial Code § 2-314(1).

> Pursuant to N.Y. U.C.C. § 2-314(1), "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." The statute provides that in order for goods to be merchantable, they must be "fit for the ordinary purposes for which such goods are used."  N.Y. U.C.C. § 2-314(2)(c). "Thus, liability for breach of warranty [of merchantability] depends on 'the expectations for the performance of the product when used in the customary, usual and reasonably foreseeable manners.'" Derienzo v. Trek Bicycle Corp *.,* 376 F. Supp.2d 537, 570 (S.D.N.Y. 2005) (quoting Denny v. Ford Motor Co.*,* 87 N.Y.2d 248, 258 (N.Y.1995)); see also Wojcik v. Empire Forklift, Inc.*,* 783 N.Y.S.2d 698, 701 (N.Y. App. Div. 3 Dept. 2004) ("To establish that a product is defective for purposes of a breach of implied warranty of merchantability claim, a plaintiff must show that the product was not reasonably fit for its intended purpose, an inquiry that focuses on the expectations for the performance of the product when used in the customary, usual and reasonably foreseeable manners.") (internal quotations and citations omitted).

Scientific Components Corp. v. Sirenza Microdevices, Inc., 2006 WL 2524187, at * 7

(E.D.N.Y. Aug. 30, 2006).

However, the warranty that goods will be fit for which such goods are used "is not a guarantee that the product will be perfectly safe or 'fulfill [a] buyer's every expectation.'" Ferracane,  2007 WL 316570, at * 8 (quoting Denny, 87 N.Y.2d at 258 n. 4 (quotations and citation omitted; brackets in original)).  "Rather, 'such a warranty 'provides for a minimal level of quality.'" Id.  (quoting Denny, 87 N.Y.2d at 258 n. 4).  "[G]oods that are 'doing what they were supposed to do for as long as they were supposed to do it . . . clearly [live] up to that 'minimum level of quality' which is all U.C.C. 2-314(2)(c) requires.'" Id. (quoting Prohaska v. Sofamor, S.N.C., 138 F. Supp.2d 422, 449 (W.D.N.Y.  2001)).

New York Uniform Commercial Code § 2-315 governs the implied warranty of fitness for a particular purpose.  This provides, in relevant part:  "Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is . . . an implied warranty that the goods shall be fit for such purpose."  N.Y. U.C.C. § 2-315.  To establish a claim for the breach of an implied warranty of fitness for a particular purpose, "the buyer must establish that the seller had reason to know, at the time of contracting, the buyer's particular purpose for which the goods are required and that the buyer was justifiably relying upon the seller's skill and judgment to select and furnish suitable goods, and that the buyer did in fact rely on that skill." Saratoga Spa & Bath v. Beeche Sys. Corp., 656 N.Y.S.2d 787, 790  (3rd Dept. 1997).  Thus, "[u]nder a theory of breach of implied warranty of merchantability or breach of implied warranty of fitness for a particular purpose, the inquiry is focused on consumer

18

expectations when the product 'was being used for the purpose and in the manner intended.'" Henry v. Rehab Plus Inc., 404 F. Supp.2d 435, 443 (E.D.N.Y 2005) (quoting Beneway v. Superwinch, Inc., 216 F. Supp.2d 24, 30 (N.D.N.Y. 2002)).

There is no evidence that the shoes, at the time they were sold, did not meet the minimal level of quality for a safety shoe.  Indeed, the record reflects that there were no complaints about the shoes that were immediately sold by Jkpeez except for those that were purchased by Shell and stored for several years.  The question that remains, however, is whether Defendant had reason to know, at the time of contracting, that Plaintiff intended to store the shoes for well over a year in its Nigerian warehouse.  While the evidence in support of such a claim is scant, when viewing it in the light most favorable to Plaintiff and drawing every reasonable inference in its favor, there is enough for Plaintiff to survive summary judgement of the claim.

Frank D'Abramo asserts in his declaration that Lehigh was aware that of the 8,214 pairs of safety shoes Styles 5628 and 5636 purchased in 2002, "1,026 pairs were to be immediately sent to Shell on back order, while the balance would be placed in Jkpeez'[s] in inventory at its warehouse in Nigeria."  D'Abramo Decl. ¶ 16.  D'Abramo further contends that because the 2002 order was so much bigger than previous orders, and based upon Lehigh's knowledge of Factory Associates' past sales and interactions with Shell, Lehigh must have known that many of the shoes were to be stored in Nigeria to be sold if and when the demand arose.  Id.  While there is no clear evidence that Lehigh knew that the shoes would be stored more than a year, it is possible that a finder of fact could draw this conclusion.  If the finder of fact draws this conclusion, then it is possible for the finder of fact to conclude that the shoes were not reasonably fit for the intended

purpose of storage in a Nigerian warehouse for more than a year before use.  Accordingly,

amending the complaint to add a claim asserting the breach of the implied warranty of

fitness for a particular purpose would not be futile.  Further, while Defendant argues that

amendment should not be allowed on the grounds that it will be prejudiced because

discovery has not been conducted on the issue of what the parties understood about the

length of time the shoes was be stored, the asserted prejudice can easily be cured by a

limited extension of the discovery period.

**IV.  CONCLUSION**

For the reasons set forth above, Plaintiff's motion to amend the Complaint is

**GRANTED IN PART AND DENIED IN PART**.  The motion is granted inasmuch as Plaintiff

may add a claim for breach of the implied warranty of fitness for a particular purpose, and

denied in all other respects.   Plaintiff shall file and serve an amended complaint

consistent with this Decision and Order within fifteen (15) days of the date of this Decision

and Order.  The Court will allow a limited period of additional discovery (not exceed two (2)

months from the date of this Decision and Order) which shall be overseen by the Hon.

David E. Peebles, United States Magistrate Judge, to address any factual issue which

may have arisen from the allowed amendment.

Defendant's motion for summary judgment is **GRANTED IN PART AND DENIED IN

PART**.  The motion is granted inasmuch as all of Plaintiff's claims asserted in the original

Complaint and in the proposed Amended Complaint, **except** for the claim premised upon

a theory of breach of the implied warranty of fitness for a particular purpose, are

dismissed.  Defendant's motion is, in all other respects, denied.

20

**IT IS SO ORDERED**

DATED:June 26, 2007

Thomas J. McAvoy
Senior, U.S. District Judge